Curia, per

Earle, J.
The Act of 1793, was passed for the purpose of settling a doubtful question on an important subject. The terms are very general, and, perhaps, were not intended, at the time, to embrace the homicide of one slave *108 by another. At least, considering the policy of the country then, in regard to slaves, it may well be doubted whether such cases were contemplated at the time the Act was passed. Yet the terms are so broad and comprehensive, that they do, literally, embrace all cases of homicide. But the tendency of our modern legislation has been such as to promote a more favorable regard for the life of the slave, and we think the presiding Judge below was right in ordering the prohibition. The last clause of the Act, on a fair and liberal construction, applies as well to the trial of slaves as of white persons: “and the persons guilty of such striking or wounding, shall be tried by and before the same court as if the deceased had suffered the injury in the same county or district in which he died.” Inasmuch, therefore, as the slave in question died in the parish of St. Philips and St. Michaels, and the jurisdiction of justices and freeholders is local, there would have been the same difficulty as existed at common Law, in regard to the proper place of trial. All the analogies of the law are in favor of the construction given by the Court below, and the claim of the relator here, is strengthened by the consideration that, if the accused were tried in St, Philips and St. Michael’s, the verdict must have been unanimous. The judgment of the Circuit Court is affirmed.
Elliott for the appellant; Elfe, contra.
The whole Court concurred.